UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IDABEL L.B. o/b/o S.B.L.,

        Plaintiff,                     **DECISION AND ORDER**

   v.

                                        6:23-CV-06445 EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## **INTRODUCTION**

Represented by counsel, plaintiff Idabel L.B. ("Plaintiff") brings this action on behalf of S.B.L., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 14), and Plaintiff's reply (Dkt. 15).

For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted, and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

On January 4, 2019, Plaintiff protectively filed an application for SSI on behalf of S.B.L., a child under the age of 18. (Dkt. 6 at 26, 285-91).[1] Plaintiff alleged S.B.L.'s disability began on January 1, 2016. (*Id.* at 26, 285). Plaintiff's application was initially denied on March 13, 2019. (*Id.* at 26, 69-74). On October 28, 2021, Plaintiff appeared at a hearing before administrative law judge ("ALJ") Theodore Burock. (*Id.* at 45-58). On June 2, 2022, the ALJ issued an unfavorable decision. (*Id.* at 26-38). Plaintiff requested review by the Appeals Council, which was denied on June 12, 2023, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 5-9). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924(d)).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing

tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether S.B.L. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that S.B.L. was a school-age child on January 4, 2019, the date the application was filed, and was an adolescent on the date of the written determination. (Dkt. 6 at 27). At step one, the ALJ determined that S.B.L. had not engaged in substantial gainful activity since January 4, 2019, the application date. (*Id.*).

At step two, the ALJ found that S.B.L. suffered from the severe impairments of attention deficit hyperactivity disorder, depressive disorder, anxiety disorder, and oppositional defiant disorder. (*Id.*). The ALJ further found that S.B.L.'s medically

determinable impairment of asthma and history of tics, and history of limited English proficiency were non-severe. (*Id.* at 27-28).

At step three, the ALJ found that S.B.L. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 28). Similarly, the ALJ found that S.B.L. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.* at 30). In making this determination, the ALJ considered S.B.L.'s functioning in each of the above-mentioned six domains and concluded that S.B.L. had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. (*Id.* at 30-31). The ALJ further found that S.B.L. had no limitation in moving about and manipulating objects and no limitation in health and physical well-being. (*Id.*). Accordingly, the ALJ found that S.B.L. was not disabled as defined in the Act. (*Id.* at 38).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner for further proceedings, arguing that: (1) the ALJ's finding that S.B.L. had a less than marked limitation in the ability to care for herself is not supported by substantial evidence; and (2) the ALJ did not properly evaluate the effect of S.B.L's structured school setting and supports. (Dkt. 10-1 at 9-17). The Court finds no error.

### A. Domain of Ability to Care For Oneself

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the

- 5 -

decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id.* (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* (quotation and citation omitted).

As an initial matter, Plaintiff's argument—that the evidence supports a greater limitation in the domain of caring for oneself—is based largely on her disagreement with how the ALJ weighed the evidence. In other words, Plaintiff's contention is that the ALJ cherry-picked evidence that supported his conclusion while failing to sufficiently credit certain items of evidence in the record which she contends support a finding of marked limitations. Plaintiff's arguments do not require remand. It is not the function of this Court to re-weigh evidence or consider *de novo* whether S.B.L. is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in

original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (quotation and citation omitted)).

The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence. While the record supports that S.B.L. has limitations in functioning, the ALJ adequately explained how he arrived at his determination that S.B.L. has a less than marked limitation in the domain of caring for herself.

In assessing the domain of caring for oneself, the ALJ must "consider how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in [his or her] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). This includes consideration of the child's ability to regulate him or herself and the ability to respond to changes in emotions as well as to the daily demands of his or her environment to take care of one's personal needs, health, and safety. *Jenia W. o/b/o L.J.R. v. Comm'r of Soc. Sec.*, No. 20-CV-01303, 2022 WL 507345, at *4 (W.D.N.Y. Feb.

18, 2022). "[T]his domain focuses on how well a child relates to herself by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments." *Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1337 (WBC), 2021 WL 3861422, at *3 (W.D.N.Y. Aug. 30, 2021).

As explained in the written determination, to support his conclusions, the ALJ relied on the opinions of State agency consultants Richard Small, Ph.D., and Anjana Popat, M.D. (Dkt. 6 at 59-67). In March of 2019, Dr. Small and Dr. Popat opined that S.B.L. had a less than marked limitation in the ability to care for herself and that her emotional regulation was improving. (*Id.* at 63). The ALJ explained his reasoning for finding the opinions of Dr. Small and Dr. Popat persuasive:

> The opinions are supported by and consistent with the overall evidence of record that shows the claimant has a history of mental health impairments that she continued to treat during the relevant period. They are also supported by and consistent with the record that notes the claimant treated her condition with conservative measures that helped to manage her symptoms. In addition, the opinions are supported by and consistent with the record that notes the claimant experienced improvements in her overall conditions during the relevant period to the point in which her services were able to be reduced and the testimony at the time of hearing, which noted some ongoing issues but that the claimant was doing well overall. Given the overall record, the opinions are persuasive.

(*Id.* at 36).

The ALJ also considered the opinions of S.B.L.'s educational providers. Specifically, Julie Rupp, LPN, S.B.L.'s school counselor, completed a questionnaire dated February 22, 2019. (*Id.* at 312-19). In the domain of caring for herself, Ms. Rupp noted that S.B.L. began a new medication and had observed "positive self-regulation skills." (*Id.*

at 316). She opined that S.B.L. had no problem caring for personal hygiene or caring for physical needs, and a slight problem cooperating in or being responsible for taking medications. (*Id.*). She opined that S.B.L. had an obvious problem with handling frustration appropriately; being patient when necessary; using good judgment regarding personal safety; identifying and appropriately asserting emotional needs; responding appropriately to changes in own mood; using appropriate coping skills to meet daily demands of the school environment; and knowing when to ask for help. (*Id.*). She did not identify any skills to be "a serious problem" or "a very serious problem." (*Id.*). The ALJ also addressed the opinion of Stephanie Harter, S.B.L.'s science teacher, who completed a questionnaire on October 21, 2021. (*Id.* at 869-76). Ms. Harter opined that S.B.L. had no problems observed in the domain of caring for herself. (*Id.* at 874). The ALJ explained his assessment of these opinions as follows:

> The opinions are supported by and consistent with the overall evidence of record at the time in which they were written, given the treatment received in the form of an IEP and medication and behavior management of her mood symptoms. The opinions are also supported by and consistent with the discontinuation of her IEP and limited evidence submitted to suggest ongoing behavioral treatment through the date of the decision. However, the undersigned finds that the opinion of Ms. Harter more accurately represents the claimant's functioning, given her improved symptoms noted by treatment providers and the claimant's caregivers. Nonetheless, the opinions are partially persuasive.

(*Id.* at 37).

The ALJ also considered the opinion of Amanda Hamilton, LMSW. (*Id.* at 618-23). On September 14, 2021, Ms. Hamilton completed a childhood disability evaluation form and in it, opined that S.B.L. had marked limitations in her ability to acquire and use information and attend and complete tasks, a less than marked limitation in interacting and

relating with others, and no limitations in her ability to move about and manipulate objects, care for herself, and maintain her health and physical wellbeing. (*Id.* at 620-21). The ALJ explained his assessment of Ms. Hamilton's opinions:

> This opinion is not supported by or consistent with the overall evidence of record, as it is overstated. Specifically, the opinion is not supported by or consistent with the record which shows the claimant treated her condition with conservative measures that included behavioral therapy and specially designed instruction in the regular education setting. It is also not supported by or consistent with the record that notes the claimant experienced improvements in her overall conditions during the relevant period, which helped to control her behaviors and allowed her IEP plan to be discontinued. In addition, the opinion not supported by the testimony at the time of hearing that generally noted some ongoing issues but that the claimant was doing well. Therefore, the opinion is not persuasive.

(*Id.* at 37-38).

In addition, the ALJ reviewed S.B.L.'s treatment and school records in assessing this domain. He noted that the records demonstrate that S.B.L.'s depressive disorder, anxiety disorder, and oppositional defiant disorder cause limitations in her ability to care for herself and referenced treatment records indicating that S.B.L. was distracted, did not engage in non-preferred activities, and was reported to be argumentative and yell at adults when upset. He also referenced an inpatient hospitalization during the relevant period but noted that it was "an acute situation that was related to family stressors," and that after the hospitalization, she did not require any continuous or extensive treatment. (*Id.* at 35). But the ALJ also indicated that "the record generally suggests that [S.B.L.'s] mood symptoms improved during the relevant period and decreased in severity and frequency" and "[i]n

fact, treatment records note that her overall symptoms were only mild to moderate in nature during the relevant period." (*Id.*).

Plaintiff argues that the ALJ selectively focused on portions of the record that supported his conclusions while ignoring those that demonstrate that greater restriction was warranted. But Plaintiff does not cite any evidence that the ALJ overlooked. As a result, Plaintiff's challenges to the ALJ's determination amount to an invitation for the Court to re-weigh the evidence of record, which the Court may not do. *Amanda F. o/b/o A.J.F. v. Comm'r of Soc. Sec.*, No. 21-CV-00509, 2023 WL 3686638, at *5 (W.D.N.Y. May 26, 2023) ("In sum, the ALJ considered all the evidence of record when assessing the limitations in the six functional domains of functioning. Ultimately, plaintiff's argument merely emphasizes the existence of conflicting evidence in the record, but it was the responsibility of the ALJ to evaluate the conflicting evidence and reasonably determine the degree of limitation in the specific functional domains."). While there may be evidence in the record supporting a conclusion that S.B.L. has greater limitations, the ALJ considered those records but just did not credit them in the manner that Plaintiff suggests. The ALJ's conclusion that S.B.L.'s limitations do not rise to the level of being marked is well-supported in the record.

In sum, the Court finds that the ALJ's determination is supported by substantial evidence. Accordingly, remand is not required.

B.  **Effect of S.B.L.'s School Setting and Supports**

Plaintiff next argues that the ALJ did not appropriately consider the impact that S.B.L.'s supportive settings had on her functioning. Again, the Court disagrees.

Social Security regulations require an ALJ to consider a claimant's supportive settings when evaluating the child's ability to function. *See* 20 C.F.R. § 416.924a(b)(5)(iv). "While an ALJ need not make explicit reference to the effects of a structured or supportive setting to be deemed to have considered them, . . . remand may be appropriate if it is evident that the ALJ did not consider this factor." *Sarah H. o/b/o D.R. v. Comm'r of Soc. Sec.*, No. 20-CV-1736-FPG, 2023 WL 2445333, at *3 (W.D.N.Y. Mar. 10, 2023) (quotation and citation omitted); *see also Smith ex rel. M.M.S. v. Comm'r of Soc. Sec.*, No. 16-CV-362-FPG, 2017 WL 3404760, at *5 (W.D.N.Y. Aug. 9, 2017) ("Furthermore, it is not apparent if the ALJ considered whether M.M.S.'s performance on these tests was due to her special education accommodations. Although the ALJ need not make explicit reference to the effects of a structured or supportive setting, the SSA's regulations require the ALJ to consider the effects of structured or supportive settings on a child's ability to function normally." (quotation and citation omitted)).

In *Appleberry o/b/o R.A. v. Comm'r of Soc. Sec.*, No. 6:18-CV-6237, 2019 WL 4929828 (W.D.N.Y. Oct. 7, 2019), the Court explained the importance of this analysis:

> When a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant. 20 C.F.R. § 416.924a(b)(5)(iv)(C). Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting." *Id.* "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether

[the claimant] would continue to function at an adequate level without the structured or supportive setting." *Id.*

*Id.* at *6. In *Appleberry*, the child was "in a self-contained special education classroom, which was classified as 'Other Health Impaired' and had a student-teacher ratio of 15-1," and received a number of accommodations for testing, seating, directions, and movement. *Id.* But because the ALJ "made no effort to determine whether [the child] can function independently, appropriately, and effectively in an age-appropriate manner outside of [a] highly structured setting," remand was warranted. *Id.* (citations and quotations omitted).

Here, the ALJ expressly discussed Plaintiff's school setting and supports. He discussed how in April 2019, an Individualized Education Program ("IEP") was established "to provide the claimant with special designed instruction in the form of small group instruction, graphic organizers, extended time to process information, use of a behavioral chart to track attention and work habits, use of modified materials, and one to two-step directions." (Dkt. 6 at 32 (citing 699)). But during the time the IEP was in place, Plaintiff remained in her regular classroom for 6.9 hours out of the 7-hour day. (*Id.*). S.B.L. continued with the IEP in 2020, having small group instruction, extended time, frequent breaks, and cues for on-task behavior, but still remained in the regular classroom for approximately 93% of the school day. (*Id.*). When testing in February and March of 2021 demonstrated average findings in cognitive abilities, reading skills, logical thinking, appropriate judgment and insight, in April 2021, S.B.L.'s services were de-classified and she was no longer eligible. (*Id.* at 33). At that time, S.B.L. was placed on a 504 Accommodation Plan to include "frequent check-ins for understanding, additional wait-time, graphic organizers, use of visual aids and models, small group testing, extended test

times, breaks during testing, and counseling services once per week for thirty minutes." (*Id.*). In addition, the opinions of Dr. Popat and Dr. Small, found persuasive by the ALJ, both expressly noted consideration of S.B.L.'s "functioning in unusual settings (e.g., one-to-one, a CE) vs. routine settings (e.g., home, childcare, school)." (*Id.* at 66). Because it is clear that the ALJ considered the structured or supportive settings available to S.B.L. and the role they played in allowing her to function adequately, the Court finds that the determination is supported by substantial evidence. *See McDaneil o/b/o X.A. v. Comm'r of Soc. Sec.*, No. 17-CV-1326, 2019 WL 3500855, at *6 (W.D.N.Y. Aug. 1, 2019) ("The record here clearly demonstrates that the ALJ gave careful consideration to the entire record determining the level of the child's functioning in and outside of the structured environment X.A. was in. It is undisputed that plaintiff was in a 15:1 self-contained special education classroom, however, consideration of this fact alone does not warrant a finding of a marked limitation."). Accordingly, remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 21, 2025
       Rochester, New York